## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF MICHIGAN

Jay Jagannathan, M.D., FAANS,                    Case No. 26-

     Plaintiff,

v.

DOC-4 Columbus Ave MOB, LLC,

                                                               /

## COMPLAINT

1.      This is an action for breach of a commercial lease agreement arising from Defendant DOC-4 Columbus Ave MOB, LLC's ("DOC-4" or "Landlord") improper calculation and assessment of charges for common expenses of the property.

2.      DOC-4 has inflated and improperly allocated expenses to Plaintiff Dr. Jagannathan M.D., FAANS ("Dr. Jagannathan") including without limitation applying occupancy-based increases to alleged expenses that do not vary with occupancy and charging amounts that are not supported by proper accounting.

3.      This is not a tenant trying to avoid paying base rent. Rather, Landlord is trying to convert opaque, inconsistent, and unsupported operating-expense assessments into a default and eviction. The Lease Agreement gives Landlord authority to recover certain expenses, but only if they are legitimate allowable expenses, allocated by the correct pro-rata share, adjusted only through sound

4913-0611-6788_3

accounting and management principles and in accordance with the written lease agreement. DOC-4's own documents show unexplained gross-ups, inconsistent percentages, unexplained escalations from $7,389.04 to $98,323.90 and then $113,750.86, and a refusal to provide the information necessary to verify the charges—all of which are violations of the Lease Agreement.

## PARTIES, JURISDICTION, AND VENUE

4.     Dr. Jagannathan is an individual who resides and conducts business activities in Michigan.

5.     DOC-4 is a Delaware limited liability company. Upon information and belief, none of DOC-4's members are citizens of the state of Michigan, and its principal place of business is located in Milwaukee, Wisconsin.

6.     Under 28 U.S.C. §1332, this Court has subject matter jurisdiction over this action because there is complete diversity between the parties. Dr. Jagannathan is a citizen of the state of Michigan and DOC-4 is a citizen of Delaware or Wisconsin, and the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees.

7.     Under 28 U.S.C. §1391(b) venue is proper because (1) DOC-4 does regular and systematic business in this District and (2) the property that is the subject of this action is situated in Bay County, Michigan within this District.

1

8.      This Court has personal jurisdiction over DOC-4 because DOC-4 purposefully availed itself of the privilege of conducting business in Michigan by acquiring, owning, operating, managing, leasing, and seeking to enforce rights concerning commercial real property located in Bay City, Michigan; by claiming rights as Landlord under the Lease Agreement for the Premises located in Michigan; by directing rent statements, operating-expense charges, default notices, and demands for payment to Dr. Jagannathan in Michigan; and by filing an eviction action in Michigan based on the same Lease Agreement and disputed operating-expense charges that are the subject of this action.

## FACTUAL ALLEGATIONS

9.      On July 30, 2020, Dr. Jagannathan and Bay City Medical Office Building, LLC entered into a written Lease of Space (the "Lease Agreement") for approximately 3,500 square feet (the "Premises") within the medical office building located at 4 Columbus Avenue, Bay City, Michigan (the "Building"). *See* **Exhibit 1**, Lease of Space Agreement.

10.     DOC-4 alleges that it is a successor-in-interest to Bay City Medical Office Building, LLC, but it has not provided any assignment or other documentation establishing that it is a successor-in-interest.

2

4913-0611-6788_3

11. Under the Lease Agreement, Dr. Jagannathan is to pay base rent and additional charges to DOC-4, including operating expenses. *Id.* at § 3.3. ("Operating Expenses").

12. The Lease Agreement provides that Dr. Jagannathan will pay a proportionate share of Operating Expenses (the "Proportionate Share"), based on the ratio of the Premise to the total rentable space feet in the entire Building. *Id.* at § 1.11.

13. Any adjustments made to the Operating Expenses must be calculated properly using "sound accounting and management principles." *Id.*

14. During the term of the Lease Agreement, and particularly beginning in or around 2025, DOC-4 increased substantially the amounts charged to Dr. Jagannathan for Operating Expenses.

15. The increases that DOC-4 demanded were not accompanied by any meaningful explanation or supporting documentation showing how the amounts were calculated or what expenses were actually incurred.

16. In or around August of 2025 and continuing for every month thereafter, Dr. Jagannathan, through counsel, repeatedly requested information regarding the calculation of Operating Expenses, including the basis for the increased charges and the supporting records. **Exhibit 2**.

4913-0611-6788_3

17. DOC-4 failed and refused to provide sufficient detail or documentation to substantiate the increased amounts being assessed.

18. Upon information and belief, the Operating Expenses charged during this period were not calculated using sound accounting and management principles, but instead were arbitrary and determined using inconsistent methodologies, unsupported assumptions, and misallocation of costs.

19. The amounts charged do not reflect expenses actually paid or reasonably incurred in connection with the operation of the Building, but instead include inflated or improperly allocated alleged costs.

20. To avoid default while continuing to dispute these improper charges, Dr. Jagannathan tendered rent payments of base rent under protest beginning in or around April 2025.

21. DOC-4 accepted all of those base rent payments without objection and without responding to or addressing the objections raised concerning the Operating Expenses.

22. Upon information and belief, rather than accurately calculating Operating Expenses in good faith in accordance with the Lease Agreement, DOC-4 shifted financial burdens within the Building in a manner that resulted in increased charges to existing tenants, including Dr. Jagannathan.

4

23.     As a result of this conduct, Dr. Jagannathan has been charged and has paid Operating Expenses in excess of what is permitted under the Lease Agreement and has been unable to verify the propriety of those charges.

24.     On March 19, 2026, Dr. Jagannathan received a letter from DOC-4 detailing the reconciliation for Operating Expenses claiming that he owed $7,389.04 in unpaid Operating Expenses from January 2025 to December 2025 ("The 2025 CAM Reconciliation Detail").  **Exhibit 3.**

25.     DOC-4's 2025 CAM Reconciliation Detail lists Administrative, Ground Rent, Insurance, Janitorial, Maintenance and Repair, Management Fees, Real Estate Taxes, and Utilities as operating expense categories.

26.     DOC-4's 2025 CAM Reconciliation Detail applies a gross-up adjustment of $25,499.14 without identifying the occupancy rate, the expense categories grossed up, or why the gross-up complied with § 3.3.

27.     DOC-4's 2025 CAM Reconciliation Detail applies one pro-rata share, 5.0536%, to operating expenses and another, 5.5980%, to tenant passthrough expenses, without explanation.

28.     One month later, on April 24, 2026, DOC-4 issued a written demand letter to Dr. Jagannathan claiming that Dr. Jagannathan owes at least $98,323.90 for Operating Expenses.  *See* **Exhibit 4**, April 24, 2026 Letter.

5

29. The amounts demanded in the April 24, 2026 letter were based, in whole or in part, on the same Operating Expenses that Dr. Jagannathan had previously disputed and for which he had continuously requested supporting documentation from DOC-4.

30. DOC-4's demand letter did not provide a sufficient explanation or substantiation of how the Operating Expenses were calculated or why the disputed amounts were purportedly owed under the Lease Agreement.

31. Nor did DOC-4 explain how the Operating Expenses for 2025 increased from $7,389.04 to $98,323.90.

32. Rather than provide any explanation, DOC-4 initiated an eviction action on May 4, 2026 against Dr. Jagannathan alleging nonpayment of rent and asserting a right to possession of the Premises.

33. DOC-4's eviction action is based on the alleged nonpayment of the same disputed charges, including Operating Expenses.

34. In the eviction action, DOC-4 alleges that Dr. Jagannathan owes $113,750.86 in Operating Expenses.

35. At all relevant times, Dr. Jagannathan made base rent payments, including payments made under protest, and sought to obtain clarification regarding the amounts claimed to be owed as Operating Expenses.

36. Despite accepting such rent payments, DOC-4 has attempted to characterize the disputed amounts as a default and to use those disputed charges as a basis to obtain possession of the Premises.

## COUNT I
## BREACH OF CONTRACT

37. The preceding paragraphs are incorporated by reference.

38. The Lease Agreement is a valid, binding and enforceable contract.

39. Dr. Jagannathan has performed his obligations under the Lease Agreement, including by timely tendering base rent payments and continuing to make payments, including payments made under protest, while disputing improper charges.

40. The Lease Agreement requires that Operating Expenses be calculated based on amounts paid or incurred in connection with the operation of the Building and that any adjustments be made using sound accounting and management principles.

41. DOC-4 has breached the Lease Agreement by improperly calculating and assessing Operating Expenses charged to Dr. Jagannathan.

42. DOC-4 has further treated these improperly calculated and disputed amounts as amounts due and owing under the Lease Agreement, despite failing to calculate such amounts in accordance with the Lease Agreement.

7

4913-0611-6788_3

43.    DOC-4 has attempted to enforce payment of these disputed amounts, including by asserting default and initiating eviction proceedings based on alleged nonpayment.

44.    As a result of these breaches, Dr. Jagannathan has been required to pay Operating Expenses in excess of what is permitted under the Lease Agreement and has been exposed to the threat of loss of possession of the Premises.

45.    Dr. Jagannathan has been damaged as a direct and proximate result of DOC-4's breaches.

WHEREFORE, Dr. Jagannathan respectfully requests that this Court enter judgment in his favor and against DOC-4, award damages in excess of $75,000.00, find that DOC-4 improperly calculated and assessed Operating Expenses in violation of the Lease Agreement, determine that the alleged default based on disputed Operating Expenses is invalid, award interest, costs, attorneys' fees, and expenses incurred, and grant such other relief as this Court deems just and appropriate.

## COUNT II
## DECLARATORY JUDGMENT

46.    The preceding paragraphs are incorporated by reference.

47.    An actual and justiciable controversy exists between Dr. Jagannathan and DOC-4 regarding the proper calculation of Operating Expenses under the Lease Agreement and the amounts, if any, that are presently due and owing.

8

4913-0611-6788_3

48. DOC-4 contends that additional amounts are due under the Lease Agreement based on Operating Expenses it has calculated and assessed, and has asserted default and pursued eviction based on alleged nonpayment of those amounts.

49. Dr. Jagannathan disputes that such amounts are owed and contends that the Operating Expenses assessed by DOC-4 were not accurately calculated and do not comply with the requirements of Section 3.3 of the Lease Agreement.

50. Dr. Jagannathan further contends that DOC-4 has assessed Operating Expenses that do not reflect expenses actually paid or reasonably incurred and were not determined using sound accounting and management principles.

51. Despite repeated requests by Dr. Jagannathan for an explanation of the Operating Expenses, including the methodology used and a breakdown of the amounts assessed, DOC-4 has failed and refused to provide sufficient information to substantiate that such amounts were calculated in accordance with the Lease Agreement.

52. Dr. Jagannathan therefore contends that DOC-4 has assessed Operating Expenses that are not only improperly calculated, but also unsubstantiated, and that such amounts cannot be verified as complying with the Lease Agreement.

53.    Because the Operating Expenses were not properly calculated or substantiated, the amounts claimed by DOC-4 are not properly due under the Lease Agreement and cannot serve as a basis for default or eviction.

54.    A declaration from this Court is necessary to determine the rights and obligations of the parties under the Lease Agreement, including the proper method for calculating Operating Expenses, the extent to which DOC-4 must support and substantiate the amounts it assesses, and whether the amounts claimed are owed.

WHEREFORE, Dr. Jagannathan requests that this Court declare:

(a)    that Operating Expenses must be accurately calculated in accordance with Section 3.3 of the Lease Agreement;

(b)    that such calculations must reflect expenses paid or incurred and be determined using sound accounting and management principles;

(c)    that DOC-4 must calculate and assess Operating Expenses in a manner that reasonably allows those amounts to be evaluated for compliance with the Lease Agreement;

(d)    that DOC-4 must provide documentation establishing all amounts it alleges is owed for Operating Expenses; and

(e)    that amounts not calculated and supported in accordance with the Lease Agreement are not due and cannot serve as a basis to declare default or obtain possession of the Premises.

10

Respectfully submitted,

BODMAN PLC

By:    /s/ *Stephen P. Dunn*
        Stephen P. Dunn (P68711)
        Donovan S. Asmar (P77951)
    201 W. Big Beaver Road, Suite 500
    Troy, Michigan  48084
    248-743-6000
    sdunn@bodmanlaw.com
    dasmar@bodmanlaw.com
    *Attorneys for Plaintiff*

June 22, 2026

11

4913-0611-6788_3